COWART, Judge,
dissenting:
This ease involves an award of lump sum alimony made as an equitable distribution.
In 1978, Helen sold her equity in a mobile home and she and her ten-year old daughter moved in with Marvin in his mobile home. She used all of the net proceeds ($1,800) from the sale of the mobile home to buy a 1977 Datsun. In June, 1980, Marvin and Helen got married. They separated in February, 1982, and were divorced in March, 1982. At the time of the dissolution Marvin was fifty years old and Helen was forty-four. Marvin drinks and there was physical violence between the parties both before and after the marriage. However, Marvin had a good job earning $510.00 per week and during the marriage he supported Helen and her daughter. Helen did not work during the twenty-odd months of the marriage (1980-1981). Marvin owns his mobile home, two boats and a 1971 Datsun. He also had about $27,000 in his savings account at the time of the marriage and at the time of its dissolution.
Helen had about $1,268.00 in savings, a wedding band worth $430.00, and the 1977 Datsun she bought with the proceeds of the sale of her mobile home. Helen testified that it would cost $9,000.00 to replace the mobile home she sold when she moved in with Marvin. The trial court held that because Marvin had substantial liquid assets, and in recognition of Helen’s contribution to the marriage and her current financial condition, and to replace the mobile home she gave up to enter the marriage, Marvin should pay her $9,000.00 in lump sum alimony. Marvin appeals.
During this short marriage, Helen did not work outside the home or in any business owned by Marvin nor did she otherwise make any “special contribution” of her personal services to any property acquired during the marriage.[1] The lump *1244 sum alimony in this case was awarded not as support[2] but expressly as an equitable distribution of marital assets. In her counter-petition Helen admitted she had sufficient income to maintain herself and asked for lump sum alimony “with which to acquire a place of residence.” At the time of the dissolution in 1982, Helen had a job grossing $202.97 per week which compared very favorably to the $90.59 per week she averaged when she last worked before her marriage (1979).
Equitable distribution must relate to “property acquired during the marriage”. See Canakaris v. Canakaris, 382 So.2d 1197, at 1201 (Fla.1980). “ — Any asset acquired before a marriage is not a marital asset”, Horton v. Horton, 433 So.2d 1386 (Fla. 5th DCA 1983). When the shoe was on the other foot, i.e., when a trial court made an equitable distribution of a wife’s separate property, this court reversed, see Gardner v. Gardner, 452 So.2d 981 (Fla. 5th DCA 1984). Helen had no “special equity” in Marvin’s $27,000 savings account which was his separate property, and there is no legal justification for giving Helen $9,000.00 or one-third of it merely because Marvin had it and the trial court thought Helen needed it to buy a new mobile home for herself and her little daughter. Cf. Canakaris; Adams v. Adams, 466 So.2d 333 (Fla. 4th DCA 1985); McBride v. McBride, 424 So.2d 977 (Fla. 4th DCA 1983); Storer v. Storer, 353 So.2d 152 (Fla. 3d DCA 1977) cert. denied, 360 So.2d 1250 (Fla.1978); Ball v. Ball, 335 So.2d 5 (Fla.1976); Steinhauer v. Steinhauer, 252 So.2d 825 (Fla. 4th DCA 1971). Equitable distribution is a doctrine relating to the division of marital property upon dissolution. There is no lawful doctrine for the division, on dissolution of marriage, of the separate property of one spouse. Any such “Robin Hood” doctrine would necessarily violate traditional, fundamental American concepts of private property rights. The award of lump sum alimony as equitable distribution of Marvin’s separate property should be reversed.

. This factor, although argued by Marvin's counsel, is obsolete and immaterial. In the *1244 days before the advent of no-fault divorce (1971) and equitable distribution (1980) it was common for the husband to earn the money while the wife kept the house and reared the children. The parties commonly considered the money earned by the husband to belong to him and any assets he acquired with it were often titled in his name alone and considered his property. See, e.g., Tolin v. Tolin, 401 So.2d 1167 (Fla. 4th DCA 1981). This was not then too unfair because he was legally obligated to care for her while married and he could not divorce her unless she gave legal fault and, with one exception, he was legally obligated to support her by alimony after divorce. The one exception was that a statute denied alimony to an adulterous wife. This exception troubled courts when divorce occurred after a long marriage and the husband had accumulated all the property in his name alone during the marriage. In that situation, to avoid the statute denying alimony, and to give the wife some of the property acquired during the marriage, the courts invented the concept of "special equity" and developed the theory that if she had performed services above and beyond the call of wifely duties which "special contributions” had helped the husband accumulate the property, then she was entitled to a "special equity", being a property right or interest in the property accumulated by the husband during the marriage. See, e.g., Heath v. Heath, 103 Fla. 1071, 138 So. 796 (1932). Of course, things have now changed and the doctrine of "equitable distribution” adopted in Canakaris is itself based on the theory that the marriage is a somewhat economic partnership and that regardless of the way it is legally titled, property actually accumulated by the joint or several efforts of the parties during the party is "marital property” which, upon dissolution, either party is entitled to have equitably distributed by the court between the parties. Therefore, under "equitable distribution" the wife is credited with all of her contributions that might have resulted in the acquisition of "marital property” and she need not show a "special contribution” or a "special equity" to entitle her to an equitable distribution of marital property. Accordingly, as separate concepts apart from equitable distribution, those concepts have now become obsolete in this context. In any event, "special contribution” and "special equity” concepts do not, and never did, apply to the separate property of a spouse, accumulated before or entirely outside of the marriage relationship.

. Even applying the “tipsy coachman” rule, the lump sum alimony award cannot be properly upheld as support because Helen was not shown to have needed support and the lump sum alimony award does not meet the special requirements for lump sum alimony for support as set forth in Yandell v. Yandell, 39 So.2d 554 (Fla.1949).