421 So.2d 541 (1982)
Isabel T. RION, Appellant,
v.
Fount H. RION, Jr., Appellee.
No. 81-795.
District Court of Appeal of Florida, Fifth District.
September 8, 1982.
Rehearing Denied November 10, 1982.
*542 John F. Roscow, III and James L. Tomlinson of Scruggs & Carmichael, Gainesville, for appellant.
Noah C. McKinnon of Coble, McKinnon, Rothert, Bohner and Godbee, P.A., Daytona Beach, and Cynthia S. Tunnicliff of Macfarlane, Ferguson, Allison & Kelly, Tallahassee, for appellee.
PER CURIAM.
Isabel Rion appeals from a final judgment of dissolution. She argues that the trial court erred in failing to award her lump sum alimony and any interest in certain jointly owned intangibles, and in setting permanent alimony at only eight hundred dollars ($800) per month with an automatic reduction to two hundred forty-five dollars ($245) per month (at best) within five years. We agree the record reveals an abuse of discretion in this case and accordingly we reverse the judgment as to alimony and property matters.
The parties were married on April 4, 1970, and lived as husband and wife until they separated on or about June 1, 1980. At the time of the marriage, the wife was fifty-two years of age and the husband, fifty-one. Both had been married previously.
Mr. Rion was vice president and general manager of a family owned business in Palatka. At the time of the marriage, Mrs. Rion was employed on a seasonal basis earning $150-200 per week with a dress shop in the Palm Beach area. She had stock and furniture as well as jewelry valued at $8,425 (replacement value). In addition, Mrs. Rion owned a 1967 Cadillac and $17,000 in cash (her inheritance from her late husband.)
At the time of the divorce in 1980, the husband's yearly income was approximately $115,000, including salary, interest and dividend income, and fringe benefits. His net worth was in excess of $500,000.
At the time of the divorce, Mrs. Rion's only income was $234 per month in social security benefits. She owns a 1975 Lincoln automobile as well as additional jewelry given to her by Mr. Rion which has a replacement value of $65,225.
The court awarded Mrs. Rion $800 per month permanent alimony, but provided that in the event of the husband's retirement at the age of sixty-five (or earlier if medically disabled), this sum would be reduced in direct proportion to the reduction in the husband's earned income. We believe the court erred in making this alimony award automatically subject to reduction based solely on Mr. Rion's salary. Wilbur v. Wilbur, 399 So.2d 47 (Fla. 5th DCA 1981); Kirchman v. Kirchman, 389 So.2d 327 (Fla. 5th DCA 1980); see also Evans v. Evans, 398 So.2d 943 (Fla. 3d DCA 1981); DeVito v. DeVito, 393 So.2d 1189 (Fla. 3d DCA 1981). Merely because future retirement and pension benefits are known does not make this automatic reduction in alimony proper. The alimony reduction based solely on the earned income upon retirement fails to consider the amount of other items of income such as directors fees, dividends and other income.
We also fail to understand how the court arrived at the $800 per month permanent alimony. As stated in Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980):
Permanent periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established by the marriage of the parties. The two primary elements to be *543 considered when determining permanent periodic alimony are the needs of one spouse for the funds and the ability of the other spouse to provide the necessary funds. The criteria to be used in establishing this need include the parties' earning ability, age, health, education, the duration of the marriage, the standard of living enjoyed during its course, and the value of the parties' estates.
Id. at 1201-1202.
We agree that Mrs. Rion should receive permanent alimony under this standard. She testified to needs of $3,000 per month. While the court may have concluded this figure was inflated, we conclude that the trial judge abused his discretion in reducing it to the level that he did. Mrs. Rion has little earning ability. While Mr. Rion concedes that she was helpful to him in entertaining business customers, nothing she did during the marriage equips her to support herself. During the marriage, the parties enjoyed a very comfortable life style, bordering on the luxurious. They resided in a fine home on a river-front lot and the grounds were maintained by employees from Mr. Rion's business. They employed a maid. Mrs. Rion had the unrestricted use of numerous charge accounts. They maintained memberships in yacht and country clubs and enjoyed boating in Mr. Rion's thirty-five foot cabin cruiser. The parties also traveled considerably, on business and pleasure, always going "first class." At the time of the divorce, the parties had been married for ten years. Mr. Rion was sixty-one years old and Mrs. Rion was sixty-two years old. Mrs. Rion is in fairly good health.
We believe that in light of the disparity between the parties income and assets, and considering the standard of living established during the marriage, the trial judge abused his discretion in making the award that he did. See Cowan v. Cowan, 389 So.2d 1187 (Fla. 5th DCA 1980). This matter must be remanded to the trial court for reconsideration of the permanent alimony award in light of the factors enunciated above.
Mrs. Rion also contends that the court should have granted her lump sum alimony. We do not agree. Most of the assets in Mr. Rion's estate were owned by him at the time of the marriage. The increase in the value of his estate is represented principally by an appreciation in the value of those assets.
During the marriage, Mr. Rion established various joint savings and checking accounts with his wife and these accounts are subject to the Florida Supreme Court's rules enunciated in Ball v. Ball, 335 So.2d 5 (Fla. 1976). The record does not show that these funds and assets came from Mr. Rion's salary alone. He testified he spent most of his salary to pay bills. He also testified he intended no gift to Mrs. Rion in these assets generally, and she never wrote any checks on these accounts or exercised any ownership or control over them. There was no evidence to counter this testimony in general, except with regard to one account discussed below. Therefore, the lower court correctly denied the wife an interest in these assets.
However, applying Ball v. Ball to savings account number XXXXX in First Federal Savings and Loan Association of Putnam County, we find the court erred in failing to award Mrs. Rion one-half of the balance of the account as it stood, in April of 1980, just prior to the parties' separation. The record shows twenty-three thousand dollars ($23,000) of the forty-three thousand eight hundred forty-five dollars and twenty-six cents ($43,845.26) represented the sale proceeds of real estate owned by the parties as tenants by the entirety. Mr. Rion testified that he and Mrs. Rion owned the lots equally, and with regard to that savings account, he testified she had an interest in it. Therefore, one-half of the account should have been awarded to the wife as her property. The balance of this account would have been seventy-eight thousand one hundred nine dollars and eighty-one cents ($78,109.81), but for some unauthorized withdrawals by a third party. Therefore, the judgment should be modified to award the wife thirty-nine thousand fifty-four dollars and ninety cents ($39,054.90).
*544 In summary, we reverse the judgment as to the amount of permanent alimony and remand for reconsideration of the award. We also reverse the provision as to an automatic reduction of alimony.
We modify the judgment and award Mrs. Rion $39,054.90 (her share of savings account number XXXXX) together with any earnings on said share since entry of the judgment. In all other respects the judgment is affirmed.
AFFIRMED in part, REVERSED and REMANDED in part.
DAUKSCH, FRANK D. UPCHURCH, Jr. and SHARP, JJ., concur.