452 So.2d 981 (1984)
Patricia H. GARDNER, Appellant,
v.
Winston W. GARDNER, Appellee.
No. 83-865.
District Court of Appeal of Florida, Fifth District.
June 14, 1984.
*982 Andrew A. Graham and Jacinta M. Voor of Reinman, Harrell, Silberhorn, Moule & Graham, P.A., Melbourne, for appellant.
Robert T. Westman of Stromire, Westman, Lintz, Baugh, McKinley & Antoon, P.A., and Lealand L. Lovering of Lovering, Pound & Clifton, P.A., Cocoa, for appellee.
SHARP, Judge.
Patricia Gardner argues the trial court erred in its judgment of dissolution by awarding a townhouse titled in her name to Winston Gardner, her former husband, and by awarding her their jointly owned home subject to a $20,000.00 lien. She also argues the trial court abused its discretion in awarding her only $300.00 per month permanent periodic alimony. The amount awarded was low, but not so inadequate as to be reversible.[1] However, we agree that the trial court erred in determining that the townhouse was a marital asset subject to equitable distribution.
The Gardners were married for twenty-one years. At the time of the dissolution, their twenty year old son was in college, and their sixteen year old daughter was living with the wife. Winston was paying $300.00 per month for the son's board and education on a voluntary basis. Under the decree he was required to pay $200.00 per month child support for his daughter, and $300.00 per month for alimony.
Throughout the marriage Winston was the principal wage earner. His income was approximately $27,800.00 in the last year of the marriage. He served in the Florida Legislature as a member of the House, worked as a consultant for Pan American, and earned an income from a novelty business.
Patricia was a homemaker. She had no earned income. She received $2,600.00 per year in interest from $35,000.00 worth of certificates of deposit. Although the certificates were gifts from her parents and titled in Patricia's name, they were intended to be used for her parents' benefit in the event they became ill or disabled.
The trial court ruled that everything except the certificates of deposit were subject to division as marital assets. This included the parties' jointly owned marital home which was valued at $78,000.00 and was subject to a $10,000.00 mortgage. Also included was Winston's novelty business, originally begun in the parties' home, where Patricia and the children all worked from time to time. It was valued at $15,000.00 to $30,000.00, depending upon whether Winston remained active in the business. The final asset was a townhouse purchased in 1980, titled in Patricia's name only. It was worth approximately $40,000.00, but was subject to a $30,000.00 mortgage.
The evidence and testimony at trial established that the full amount of the $9,000.00 downpayment for the townhouse came from Patricia's parents. Patricia's mother testified they gave Patricia $6,000.00 and their grandchildren $3,000.00 to purchase the townhouse. Patricia put her $6,000.00 in a specially opened joint account to handle the purchase and withdrew it at the closing. She said title to the townhouse was put in her name because her funds were being used to buy it. There was no evidence that Patricia or her *983 parents intended to make a gift of the funds or the townhouse to Winston.[2]
Winston testified that the townhouse was intended to be jointly owned, but was put in Patricia's sole name for business reasons. He jointly signed the contract to purchase, the loan application, and the mortgage note. He also made the mortgage and insurance payments on the townhouse, although Patricia insisted on paying the real estate taxes herself. He did not testify that Patricia or her parents made a gift to him of the townhouse or any funds.
Patricia argues that the trial court abdicated its judicial duties by requiring both parties to submit two lists dividing the assets, from which the other spouse would have the right to elect his or her preference. The wife refused to submit any list, and only conditionally accepted one of the husband's lists. We do not think this Solomon-like procedure employed by the trial judge to get the parties to divide their marital assets is objectionable. The trial court maintained supervision and control over the proceedings and could have rejected any proposal it felt was inequitable. However, in this case we think the trial court erred by including the townhouse in the marital asset pot to be divided by the principle of equitable distribution.
Equitable distribution is a court evolved concept in Florida. It is used to achieve a fair division of marital assets, which are those assets acquired by the parties during their marriage from their work efforts, services, and earnings. In determining whether certain property is a marital asset, the question is not which party holds title to the asset.[3] This approach is justified as a means to compensate the homemaker or non-earning partner for his or her contributions to the family unit. Through the mechanism of equitable distribution, assets are generally transferred from the earning spouse to the homemaker spouse since most of the marital assets commonly are in the earning spouse's name.[4] This case is the reverse of the normal situation, but that should not prevent the application of the doctrine if the townhouse was a marital asset.
We think property should not be transferred from one spouse to another except pursuant to equitable distribution of marital assets, a finding of special equity or as a lump sum alimony award based on the traditional finding of need, ability to pay, and special justification.[5] If the marital assets are insufficient after equitable distribution to provide a needy spouse with adequate resources and income, non-marital assets may be drawn upon to provide alimony in the classic support sense. McBride v. McBride, 434 So.2d 977 (Fla. 4th DCA 1983). In this case the award of the townhouse cannot be justified on the basis of lump sum alimony in the traditional support sense.
Nor is there any basis in the record to conclude that the townhouse was a marital asset. The source of the funds used to purchase the townhouse came solely from Patricia's parents and they were intended as gifts to Patricia and her children. At least the downpayment on the townhouse should have been considered Patricia's and the children's separate property. Separate property of a spouse includes assets of one spouse acquired from a source outside or unconnected with the marriage, such as by inheritance, property owned prior to marriage, *984 or gifts from third parties.[6] Even if the title to the townhouse had been jointly held by the parties in this case, it would have been error for the trial court to have ignored Patricia's $6,000.00 special equity in the townhouse.
Ball v. Ball, 335 So.2d 5 (Fla. 1976), held that absent a showing that a gift was intended from one spouse to the other, a special equity (a form of separate property), is created by a showing that all of the consideration for property held as tenants by the entirety was supplied by one spouse from a source totally unconnected with the marital relationship. There was no evidence any gift was intended in this case. Patricia should not be in a worse position because the title to the townhouse was in her sole name than she would have been if it were held jointly.
Winston argues he established a special equity in his own right in the townhouse which could justify the trial court's award. He used his salary or earnings to make the mortgage and insurance payments on the townhouse, and he resided in the townhouse when he was in Tallahassee on state business. However, ordinarily a special equity does not arise in favor of an earning spouse based on the investment of his earnings while the other spouse performs normal household and child-rearing responsibilities. Duncan v. Duncan, 379 So.2d 949 (Fla. 1980); Ball; Hessinger v. Hessinger, 378 So.2d 322 (Fla. 2d DCA 1980); but see Lyons v. Lyons, 436 So.2d 156 (Fla.2d DCA 1983). We do not think in this case Winston established a special equity in the townhouse. He obtained the benefit of residing in the townhouse while he was in Tallahassee rather than having to rent lodging elsewhere and the equity in the townhouse does not exceed the value of the non-marital downpayment by any considerable amount.
The equitable division of marital assets was flawed by the inclusion of the townhouse. We reverse the judgment as it pertains to the townhouse and affirm it in all other regards.
AFFIRMED IN PART; REVERSED IN PART.
DAUKSCH and COWART, JJ., concur.
NOTES
[1] Conner v. Conner, 439 So.2d 887 (Fla. 1983); Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Shaw v. Shaw, 334 So.2d 13 (Fla. 1976).
[2] See Bayliss v. Bayliss, 434 So.2d 63 (Fla. 5th DCA 1983); Rion v. Rion, 421 So.2d 541 (Fla. 5th DCA 1982).
[3] See Canakaris; Brown v. Brown, 300 So.2d 719 (Fla. 1st DCA 1974), cert. dismissed, 307 So.2d 186 (Fla. 1975).
[4] See DiPrima v. DiPrima, 435 So.2d 876 (Fla. 5th DCA 1983).
[5] Gorman v. Gorman, 400 So.2d 75 (Fla. 5th DCA 1981) (dictum); Rosen v. Rosen, 386 So.2d 1268 (Fla. 3d DCA 1980), petition for review denied, 392 So.2d 1378 (Fla. 1980); Hessinger v. Hessinger, 378 So.2d 322 (Fla. 2d DCA 1980); Easterling v. Easterling, 358 So.2d 1114 (Fla. 4th DCA), cert. denied, 364 So.2d 884 (Fla. 1978).
[6] See Neumann v. Neumann, 413 So.2d 1203 (Fla.3d DCA 1982); Schwartz v. Schwartz, 396 So.2d 806 (Fla.3d DCA 1981); Rosen; Hessinger.