612 So.2d 610 (1992)
Mark K. STRALEY, Appellant,
v.
Stacy FRANK, Appellee.
Nos. 89-3505, 90-1546.
District Court of Appeal of Florida, Second District.
December 31, 1992.
*611 Raymond A. Alley, Jr., Tampa, for appellant.
Susan Latham Steffey and Stephen W. Sessums, of Sessums & Mason, P.A., Tampa, for appellee.

ON REMAND FROM THE FLORIDA SUPREME COURT
PER CURIAM.
We consider this case on remand from the Florida Supreme Court pursuant to Frank v. Straley, 602 So.2d 1278 (Fla. 1992).
The parties to this appeal of a dissolution judgment, Mark Straley and Stacy Frank, are both attorneys. They were married in 1984 and separated four years later in 1988. Straley placed several of his premarital assets into joint names with his wife, giving rise to the presumption of a gift. See Robertson v. Robertson, 593 So.2d 491 (Fla. 1991).
Frank fared very well at the hands of the trial court. She entered this four-year, childless, two-career marriage with roughly $9,000.00 in assets and an embryonic law practice that was not producing income. She exited the marriage with approximately $150,000.00 in assets, no liabilities, and an annual income of $54,350.00 from her *612 legal employment. Indeed, the trial court awarded Frank more assets than she asked for in open court at trial. Straley, on the other hand, was denied all special equity claims and was ordered by the trial court to pay some $195,000.00 in debts, fees, and costs exclusive of his own attorney fees and costs. The trial court ordered Straley to pay $111,006.00 in unsecured marital debts, a fee for Frank's attorney in the amount of $71,706.50, and her costs of $12,836.32. Straley also incurred a personal attorney fee of $25,000.00 and costs of his own in the amount of $13,280.85. Therefore, his aggregate indebtedness, after judgment, was almost $234,000.00.
On appeal Straley challenges as inequitable the trial court's distribution of marital assets and liabilities, and the assessment of attorney fees. The disputed assets include, inter alia, the following real and personal property: Straley's interest in two speculative real estate investment partnerships owned prior to marriage (601 South Florida Avenue Land Trust and Harbor Property Associates);[1] a 21-foot Mako motorboat which was titled in the name of Straley and Frank as tenants in common prior to marriage; two lots on Palm Island in Charlotte County purchased by Straley prior to marriage, with a $15,000.00 down payment (the beach property); a vacation home built on the beach property during marriage at a cost of approximately $35,000.00; Straley's premarital furniture, subsequently placed in the beach house; a 40-foot sailboat known as the Evtide purchased during marriage and requiring costly restoration efforts; and the marital home located on Bayshore Boulevard in Tampa and the furniture therein, financed in part by the sale of a house on Bristol Avenue owned prior to marriage by Frank.
We find that the trial court erred in several particulars in fashioning its "equitable distribution." Initially, we observe that the trial court erred in characterizing the passive appreciation in market value of Straley's interest in non-marital real estate partnerships (601 and Harbor property) as a marital asset. See Wright v. Wright, 505 So.2d 699 (Fla. 5th DCA 1987). Section 61.075(3)(a)2 defines "marital assets and liabilities" as including "the enhancement in value and appreciation of non-marital assets resulting either from the efforts of either party during the marriage or from the contribution to or expenditure thereon of marital funds or other forms of marital assets... ." In this case, any increase in market value did not result from the expenditure of marital funds or from marital efforts, but resulted from "inflation or fortuitous market forces." Wright at 700. Any expenditure of marital funds on maintenance of these non-marital assets did not transform the appreciated asset into a marital asset. See Macaluso v. Macaluso, 523 So.2d 615, 616 (Fla. 2d DCA), rev. denied, 531 So.2d 1354 (Fla. 1988); Rion v. Rion, 421 So.2d 541, 543 (Fla. 5th DCA 1982); see also, Hanks v. Hanks, 553 So.2d 340, 342-343 (Fla. 4th DCA 1989). The appreciation in value of these two partnerships as a result of the infusion of marital funds was the amount by which Straley's share of the mortgage debt on 601 and Harbor property was reduced during marriage. Straley should have been debited with one-half of that amount, a sum of $4,347.50. See Landay v. Landay, 429 So.2d 1197 (Fla. 1983).
Additionally, it is clear that the trial court erred in summarily denying Straley's claim to a credit for one-half the value of the Mako motorboat, which was his interest at the time of marriage. This error was candidly conceded at oral argument by counsel for Frank. We would agree, however, that the evidence in regard to Straley's assertion of a special equity in the sailboat, the Evtide, was confusing and conflicting and the denial of that claim was not error. We also affirm the trial court's denial of Straley's claim to a special equity in the beach property, which was purchased by him prior to marriage with a $15,000.00 down payment. See Robertson. However, there was no "equity" in the trial *613 court's assignment of all of the marital debt to Straley and none of it to Frank. As pointed out in the appellant's brief:
The inequity of the trial court's plan of equitable distribution is apparent on its face. Having entered the marriage with few assets and having contributed comparatively little to the acquisition of marital assets, the wife leaves the marriage with a 1987 Jeep Wagoneer automobile and a 21 foot Mako motor boat (both fully paid for), the beach property (with $52,000.00 in equity, and the most coveted marital asset), a boat condominium slip (with nearly $10,000.00 in equity), a $7,700.00 gemstone, and over $22,000.00 in cash, including $13,000.00 in lump sum alimony. In addition, the Wife received virtually all of the personalty from both marital residences, as well as a 50% beneficial interest in 238 Franklin, and was relieved of any responsibility for $111,000.00 of marital debt.
In view of the fact that neither party to this dissolution action desires to retain any marital asset except the beach property (which they jointly own), the trial court would have been on safer ground had it granted partition of all other marital property and evenly divided the proceeds and the liabilities.
The award of attorney fees below is reversed in toto. There was no showing below that the wife lacked the present ability to pay substantial attorney fees. The evidence was exactly to the contrary. The wife is an attorney with no dependents and no liabilities, earning in excess of $50,000.00 per year. Even her one-half interest in the parties' two boats had a value in excess of $50,000.00. The purpose of section 61.16, Florida Statutes (1989), providing for assessment of attorney fees by the trial court after consideration of the financial resources of the parties, is to "compel the trial court to mitigate the harm an impecunious spouse would suffer where the other spouse's financial advantage accords him or her an unfair ability to obtain legal assistance." Nichols v. Nichols, 519 So.2d 620, 621-622 (Fla. 1988); see also, Cummings v. Cummings, 330 So.2d 134 (Fla. 1976). There is no reasonable basis in this record for finding that Frank was at a financial disadvantage in obtaining legal assistance.
We reverse and remand for the entry of a judgment consistent with this opinion. Neither party should be awarded attorney fees.
REVERSED AND REMANDED.
DAUKSCH, J., COBB, W., COWART, J., HARRIS, C., and PETERSON, E., Associate Judges, concur.
W. SHARP, Associate Judge, concurs in part, dissents in part with opinion.
GRIFFIN, J., Associate Judge, concurs in part, dissents in part with opinion, with which GOSHORN, G., Associate Judge, concurs.
DIAMANTIS, G., Associate Judge, concurs in part, dissents in part with opinion.
W. SHARP, Associate Judge, dissenting in part and concurring in part.
This court's en banc opinion in Straley v. Frank, 585 So.2d 334 (Fla. 2d DCA 1991) was disapproved in Robertson v. Robertson, 593 So.2d 491 (Fla. 1991), on the ground that section 61.075(3)(a)5, Florida Statutes (1989)[1] overturned the Ball v. Ball, 335 So.2d 5 (Fla. 1976) no-gift presumption. The case has now been returned *614 to us, still en banc, to deal with the other issues in the case in the role of sitting for our sister court, the Second District Court of Appeal.

SPECIAL EQUITY
On this issue the majority opinion follows the directive in Robertson, supra, and I generally concur with it. But even without the reversal of the Ball presumption, I think there was sufficient evidence to support the trial court's finding that Straley and Frank made cross-mutual gifts to one another of all their premarital assets, which they put into their joint names, both before and after their marriage. Clearly, Straley failed to carry his burden of proof under section 61.075(3)(a)5 that he intended no gift to Frank. Thus, I conclude that all of these assets  the beachfront lots, the vacation home, and the two boats  were marital, or jointly owned, assets and no special equity for Straley was proved in any of them.
The record shows that prior to the parties' marriage Straley owned a home on Jetton Avenue in Tampa. He sold this property, and resided with Frank in her home on Bristol Avenue, also in Tampa. With some of the proceeds from the Jetton house, Straley purchased a twenty-one foot Mako motor boat. He titled the boat in their joint names.
Straley used $15,000 of the Jetton proceeds to make a down payment on two lots on Palm Island, reachable only by boat (the Mako). He put title in their joint names with right of survivorship. After their marriage in 1984, they took title as tenants by the entireties. Using available cash or short term borrowings, they built a $35,000 vacation home on the Palm Island property.
After their marriage, Frank transferred title to her Bristol Avenue home to Straley and herself as tenants by the entireties. When it was sold, they used the proceeds to buy a house on Bayshore. The Bayshore property was used as the parties' marital residence until that relationship ended.
Before marriage, Straley also owned a sailboat named the Windvane. His investment in the Windvane was $8,500. In 1985, he put the sailboat in their joint names and refinanced it. Frank assumed joint liability for the debt.
In 1987 the parties sold the Windvane. They put $10,500 of its proceeds into acquiring the Evtide, a classic vintage sailing vessel. It also was jointly titled. It was a boat Straley had known and sailed on while he was growing up and in college. But the Evtide had fallen into disrepair.
Straley undertook an extensive and expensive restoration of the Evtide. It cost $117,000 and the work was not complete at the time of the dissolution. The parties agreed the Evtide was then worth $98,000.
To prove a special equity in these premarital assets and proceeds, Straley relied heavily on the absence in the transcript of any testimony by Frank that a gift was intended by their transfer into joint names. He testified that the transfers were solely for "estate-planning" purposes, or because various financiers or mortgagees required them. Frank testified she and Straley decided to put all of their premarital assets into their joint names because they regarded all of their assets, whenever acquired, as jointly owned property. They commingled the proceeds from their premarital assets with other jointly owned funds and properties.
The trial court's denial of any special equity in these premarital assets for Straley should be affirmed in toto. Gevertz v. Gevertz, 566 So.2d 541 (Fla. 3d DCA 1990); Foust v. Foust, 561 So.2d 589 (Fla. 2d DCA), rev. denied, 564 So.2d 1085 (Fla. 1990); Seijas v. Seijas, 557 So.2d 102 (Fla. 3d DCA 1990); Kirchinger v. Kirchinger, 546 So.2d 86 (Fla. 2d DCA 1989). Only if there is no basis in the record to support Frank's position on the special equity issue should an appellate court reverse the trial court's tacit finding that mutual gifts were intended by the transfers into the parties' joint names. Howard v. Howard, 467 So.2d 768, 770-772 (Fla. 1st DCA 1985).
Further, as provided by section 61.075(3)(a)(5), Florida Statutes (1989), Straley had the burden of proof on the no-gift *615 intended issue to establish a special equity, in the beachfront lots, which were held as tenants by the entireties. But, I submit, he had a similar burden with regard to the boats. Section 61.075(3)(a)3 defines as "marital assets" all interspousal gifts during marriage, and section 61.075(5) expressly provides:
All assets acquired and liability incurred by either spouse subsequent to the date of the marriage and not specifically established as nonmarital assets or liabilities are presumed to be marital assets and liabilities. Such a presumption is overcome by a showing that the assets and liabilities are nonmarital assets and liabilities.
Since the Mako is not by definition a "marital asset"[2] because it was jointly acquired before the parties' marriage, its "equitable distribution" to Frank without some compensating credit to Straley can be legitimately questioned. Its value is small potatoes in this picture, and it appears reasonable the court should award it to the party who needs it to reach Palm Island. But, Straley should receive compensation for his one-half interest.
In my view, the Ball presumption of no gift has been overturned en toto by the new equitable distribution statute. It no longer survives (if it ever existed) for personal property as well as real estate held as tenants by the entirety whether acquired before or after marriage. Because Ball v. Ball, supra, dealt with real property, there has always been considerable doubt in my mind as to whether it ever was intended to encompass gifts of personal property. There seems no valid reason to treat this kind of gift or transfer any differently than any other in terms of a no-gift presumption.

II. EQUITABLE DISTRIBUTION  PROPER ALLOCATION OF THE APPRECIATED VALUE OF NONMARITAL ASSETS.
In determining whether the trial court equitably distributed the parties' marital assets and debts, it is first necessary to decide whether the trial court property categorized the appreciated value of Straley's two real estate partnership interests (which occurred during the parties' marriage) as a marital asset. If none of the appreciation can be deemed to be marital, then Straley was indeed shortchanged, and the majority en banc opinion is correct. But, if all the appreciated value can be properly viewed as a marital asset, the distribution should be affirmed because the division of assets and liabilities (taking into account the marital debts which went with each asset distributed or which were allotted solely to Straley) was roughly 50/50. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).
With regard to the real estate partnerships, the record shows that Straley acquired his interests in them approximately one year before the parties married. Straley and his law partners formed the partnerships to acquire old warehouse properties in downtown Tampa, to hold them with the hope they would increase in value due to planned development nearby. After the parties married, until the time of the dissolution, Straley's interest in one partnership (601 South Florida Avenue) increased in value by $56,825, and his interest in the other (Harbor Property Association) increased by $40,899. The appreciation was caused by market conditions and nearby development in downtown Tampa, but Straley was only able to maintain his interests in the partnerships by a substantial infusion of his earnings from the law firm.
Straley purchased his partnership interests with 99% borrowed funds. The principal and interest payments had to be made periodically or Straley would have lost his interests in the partnerships to his law partners or to the financiers. Straley's payments were made by his law firm out of his share of the law firm's earnings. The payments were fully taxable to him as income, and he so reported them on his income tax returns. He also personally took deductions for whatever outlays on the partnerships the tax laws then permitted. A total of $47,000 was paid for the 601 *616 partnership and $14,740 was paid for the Harbor property.
Straley argued that his membership in his law firm predated his marriage to Frank, and thus his income earned from the law firm remained his sole property. He cited section 61.075(3)(b)3 which defines nonmarital assets as:
All income derived from nonmarital assets during the marriage unless the income was treated, used, or relied upon by the parties as a marital asset.
He pointed out that the law firm funds paid into the real estate partnerships on his behalf were never paid directly to him, or used by himself or Frank for living expenses or other marital purposes.
However, in contrast to a law partner's capital account or other passive investment in a partnership made prior to marriage, an active law partner's share of the partnership's earnings is almost certainly paid as compensation for that person's work efforts. As such, a lawyer's earnings are deemed to be marital property, absent any extraordinary showing otherwise, which was not made in this case.[3] Thus, the funds used to make the principal and interest payments on the real estate partnerships during the period of the parties' marriage and the time they appreciated in value were clearly marital. The issue in this case is whether that factor justifies the trial court's allocation of all of the appreciated value as marital.
The new equitable distribution statute provides that appreciation in value of nonmarital assets (e.g., acquired before marriage as in this case) may be deemed to be a marital asset to the extent that marital funds or work efforts contribute to the appreciation in value. It defines "marital assets" as including:
The enhancement in value and appreciation of nonmarital assets resulting either from the efforts of either party during the marriage or from the contribution to or expenditure thereon of marital funds or other forms of marital assets or both.
§ 61.075(3)(a)2, Fla. Stat. (1989).
Frank argues that once some marital funds are shown to have contributed to pay the debt and carrying charges, all of the appreciation in value becomes a marital asset. Turner v. Turner, 529 So.2d 1138 (Fla. 1st DCA 1988). Pursuant to such a view, a minuscule contribution of marital funds or work efforts, could transform a substantial appreciation in value into a marital asset. That makes little common sense, given the legislature's decision to exclude appreciation (during marriage) of the value of nonmarital assets from marital assets, as a general rule. § 61.075(3)(b), Fla. Stat. (1989).
The statute expressly requires that the appreciation so allocated to the marital asset pile must result from marital funds or work efforts. Sanders v. Sanders, 547 So.2d 1014 (Fla. 1st DCA 1989). This requires the trial judge to make the specific allocation in appropriate cases,[4] and the judge's determination arrives in the appellate court clothed with the presumption of correctness. Macaluso v. Macaluso, 523 So.2d 615 (Fla. 2d DCA), rev. denied, 531 So.2d 1354 (Fla. 1988).
In this case, I think there was a basis for the trial court to attribute all of the appreciation in value to marital assets because it resulted from the infusion of continuous and substantial marital funds over the duration of the parties' marriage. The properties were so highly leveraged, Straley had little or no equity value in them at the time the parties married. This situation can be viewed as analogous to term life insurance, which will evaporate unless the required payments are made. Further, the burden of proof that little or nothing should be allocated to the marital estate was on Straley. See Young v. Young, 606 So.2d 1267 (Fla. 1st DCA 1992).
I disagree with the majority en banc opinion that as a matter of law in this case *617 the record shows the appreciation in value was due solely to passive market conditions, and that any allocation to recompense the marital estate should be limited to reduced principal payments, or some inept application of the Landay v. Landay, 429 So.2d 1197 (Fla. 1983) formula. The record shows that the two partnership interests had little, if any, equity value at the time of the marriage, and that Straley's ownership interest in them was maintained by a substantial, periodic contribution of marital funds, during the time they appreciated in value. Had his payments not been timely made, he would have lost his interest in them. Or, had the investment not panned out, Straley could have pulled out of the enterprise and invested his earnings elsewhere.
These facts distinguish this case from Hanks v. Hanks, 553 So.2d 340 (Fla. 4th DCA 1989), Macaluso, Wright v. Wright, 505 So.2d 699 (Fla. 5th DCA 1987), and Rion v. Rion, 421 So.2d 541 (Fla. 5th DCA 1982), relied upon by the majority en banc opinion. In Wright, the parties stipulated that the appreciation in value of the wife's dance studio (acquired before the parties' marriage) was not the result of the wife's business operations nor any change to the property, repair, renovation, maintenance or the like paid out of the wife's or husband's marital earnings. It is a classic case of appreciation being attributable solely to market conditions.
In Hanks, the appellate court upheld the trial court's specially devised formula to allocate the appreciation in value in a grocery store property where both parties worked during a long-term marriage. It also said the wife was not entitled to any increase in value of duplexes the husband bought before marriage because it was "passive." There was no discussion in that case of any marital work efforts or funds being spent on the duplex properties, unlike this case.
Similarly, in Macaluso and Rion the trial courts concluded (and were affirmed on appeal) that the appreciation in premarital assets which occurred during the marriages was not due to any marital work efforts or marital funds. In Macaluso, the husband was given a valuable interest in a family business. But his sole contribution in its success was driving a truck, for which he received a salary. In Rion, the husband and wife married late in life and the husband had largely retired from active business life. The disputed assets were primarily bank accounts which had been produced by earnings of the husband's premarital assets. Rion does not involve an asset which clearly appreciated in value over the time of a marriage, as in this case.
Also in contrast with this case, in Hanks, Macaluso, Wright, and Rion, the appellate courts affirmed the trial court's determinations and conclusions. If such a determination and conclusion is a question of fact in disputed cases, as well as the allocation, some presumption of correctness is due to the trial court's decisions. I submit that is not being done in this case.
The direction in the majority en banc opinion that on remand the trial court should apply the Landay formula deprives the trial court of any discretion in making an allocation of appreciation to the marital assets pile and relegates it to a mechanical approach, which is inappropriate to this case. In Landay, the formula was devised to allocate the amount of a spouse's special equity in a marital asset when that spouse had partially used nonmarital funds to acquire it or to improve it, and it had appreciated in value during the marriage. To oversimplify,[5] a ratio was worked out using the asset's value when acquired as the denominator and the nonmarital contribution as the numerator. That was then applied against the appreciated total value of the asset, to find the amount of the contributing spouse's special equity interest in the asset.
*618 How that formula could apply here is problematic. Straley contributed 100 percent of the acquisition price, so no ratio or fraction can be worked out to determine his share of the appreciated asset. It will never be less than 100 percent. Frank never had a one-half interest in the partnerships from which Straley's special equity should be subtracted. I submit Landay should not be applied to determine the proper allocation of appreciation of nonmarital assets to the marital estate, when either marital funds or work efforts (or both) have contributed to the appreciated value under section 61.075(3)(a)2. No other Florida appellate court has taken this approach. See Young; Hanks. I suggest we should not adopt it for our sister court, the Second District Court of Appeal, or (apparently) for ourselves in the Fifth District.

III. ATTORNEY'S FEES AND COSTS
In the final judgment of dissolution, the trial court reserved jurisdiction to consider and award attorney's fees and costs for the former wife. The attorneys for both parties apparently agreed to address the issue of fees and costs at a later hearing. Following the entry of final judgment, the trial judge was reassigned to the criminal division, and a different judge presided over the fees and costs hearing.
The fees and costs issues were fully litigated at a subsequent eight-hour hearing. The parties and expert witnesses testified, and the judge considered extensive documentary evidence. Based on that record the trial judge awarded Frank all of her requested attorney's fees ($71,706.50) and $12,876.32 in costs and an expert witness fee of $1,950.
The order contains justification for these generous awards:
(1) A great disparity exists in the financial position of Former Husband and Former Wife, in that Former Husband earned in [1989] almost $75,000.00 more than Former Wife, and [he] has assets net of debt that exceeds Former Wife's assets by almost $400,000.00. During the marriage of the parties, Former Husband's income has averaged almost five times that of Former Wife.
(2) [T]his litigation had complex issues of both law and fact involving the valuation of numerous assets and the presenting of significant expert testimony. The matter was extensively litigated by attorneys for both sides. The trial of this case lasted some two and one-half days.
Following the dictates of Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990) and Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), the court expressly found Frank's attorneys' hourly rates and hours expended on the law suit to be reasonable.
Straley initially argued that a successor trial judge cannot award attorneys' fees under the circumstances as occurred in this case. I disagree with that view. Attorneys' fees and costs in dissolution cases constitute the kind of issues which may be heard and determined by a successor trial judge in supplemental proceedings. See Batista v. Batista, 553 So.2d 1281 (Fla. 3d DCA 1989). This procedure does not require the successor judge to weigh evidence not presented to him.
In reviewing on appeal an award of attorneys' fees and costs, an appellate court must accept the trial judge's conclusions or findings which resolve factual matters as true, where there is adequate support for them in the record.[6] We cannot overturn an award of attorneys' fees, unless we find an abuse of discretion on the part of the trial judge. Ball v. Ball, 554 So.2d 629 (Fla. 4th DCA 1989); Blankenship v. Blankenship, 502 So.2d 1002 (Fla. 5th DCA 1987); Turney v. Turney, 149 So.2d 83 (Fla. 3d DCA 1963). The trial judge is accorded a large measure of discretion in this area. See Dade County v. Oolite Rock Co., 311 So.2d 699, 706 (Fla. 3d DCA 1975), cert. denied, 330 So.2d 20 (Fla. 1976). Thus we should accept as accurate and fair the trial judge's determination that *619 240.2 hours in attorney time and 269.9 hours in paralegal time were reasonably required to represent Frank in this cause. As the judge noted, this dissolution was "extensively" litigated. The expert witnesses explained that Straley (perhaps because he is himself an attorney) raised numerous special equity claims or valuation issues for almost every asset. It thus became a very complicated case, requiring extensive discovery and generating a high volume of pleadings and correspondence.
Straley also argued that the trial court erred in awarding attorney's fees for Frank's lead counsel at the highest hourly rate in the legal community for dissolution cases. However, the competence, special knowledge, and skill of an attorney are valid factors which should be considered in arriving at a reasonable attorney's fee award.[7] No one questioned that Frank's legal counsel is at the pinnacle of his field. I disagree that a reasonable fee award requires the trial judge to base his award on the average or mean hourly rate in the legal community.
The next question is whether the trial judge exceeded his discretion by requiring Straley to pay all of Frank's reasonable attorney's fees. This requires an examination of the parties' relative financial circumstances.[8] An award of attorney's fees pursuant to section 61.16 is intended to equalize the parties' abilities to retain competent representation.[9] It need not be reserved for awards to impecunious spouses.
Looking at the equitable distribution award in a light most favorable to Frank, it appears that she left this four-year, childless marriage, with net assets of approximately $150,000, all of which were marital assets. Straley's post-judgment net assets totalled approximately $550,000,[10] of which $146,486 were marital assets.[11]
Essentially, the equitable distribution award split the marital assets close to equally. But neither party was given substantial liquid assets because, in fact, they had not acquired any substantial liquid assets during their marriage. Without selling some marital asset awarded, neither party can immediately pay the fees awarded in this case.
Frank neither sought, nor was awarded, any periodic alimony. She, too, is a practicing attorney. Her current earnings are $54,350 per year. Straley's earnings from his law firm were approximately $113,000 in 1989. There is a disparity in their income earning abilities, but in all candor, not a "huge" one.[12]
Although a party need not be totally destitute and unable to pay his or her own attorney's fees in order to merit such an award,[13] courts should not impose the full brunt of a fee award on one party, if the other spouse receives a relatively equal and substantial split of the marital assets,[14] and if the other spouse also has substantial *620 income or has the financial ability to obtain competent legal counsel without inequitable diminution of that spouse's economic status or security.[15] The Second District has taken a more flexible view[16] of such awards than the Fifth District, which commonly reverses attorney's fee awards in cases similar to this one.[17] Since we are sitting as associate judges for the Second District Court of Appeal, we should not follow the rule developed by the Fifth District cases.
Where it is possible for spouses to pay some portion of the attorney's fees awarded, as in this case, I think it is an abuse of discretion to impose on Straley the full liability for Frank's fees.[18] In order to instantly pay her fees, Straley will be required to sell the only substantial marital asset he received, the Evtide, and that would distort the equitable distribution award fashioned by the trial court.
Accordingly, I would affirm the trial judge's determination as to the reasonableness of the attorney's fee award, but remand for further consideration of what portion of that award Straley should be required to pay, in view of the parties' relative financial circumstances. In the event Straley cannot meet his obligation to pay his apportioned share of Frank's fees from his resources, the trial court should consider a scheduled payment plan, at a fair interest rate. See Johns v. Johns, 423 So.2d 443 (Fla. 4th DCA 1982). I would affirm the trial court's decision in all other regards.
GRIFFIN, Judge, Associate Judge, concurring in part, dissenting in part.
I concur generally with Judge Sharp's analysis of the special equity and equitable distribution issues. On the attorneys' fees issue, given the parties' relative net worth and income and the facts adduced in the litigation of the fees issue, I cannot find any basis to conclude that the trial court committed reversible error in assessing the entire fee against appellant.
GOSHORN, G., Associate Judge, concurs.
DIAMANTIS, G.N., Associate Judge, concurring in part and dissenting in part.
I concur with the majority opinion's conclusion that the trial court's disallowance of the special equity claimed by the husband in the beachfront lots and the sailboat, the Evtide, must be affirmed on the authority of Robertson v. Robertson, 593 So.2d 491 (Fla. 1991).
I also agree with the majority opinion's conclusion that the trial court erred in summarily denying the husband's claim for one-half the value of the Mako motorboat.
I basically concur in the majority opinion's holding that the trial court erred in some particulars in fashioning its equitable distribution awards. However, as to the passive appreciation in market value of the wife's interest in the non-marital real estate partnerships (601 and Harbor Property), I would remand this matter to the trial court to determine the extent of the wife's marital interest pursuant to the principles of Dyson v. Dyson, 597 So.2d 320 (Fla. 1st DCA 1992).
In Dyson the court explained that where a party has separately owned property on which marital funds or labor were expended during marriage, the value of the property at the time that it was acquired, together with any reasonable proration of the appreciated value that the party may show is attributable to causes other than the parties' contribution of marital funds and *621 labor is shielded from equitable distribution. Dyson v. Dyson, 597 So.2d at 324. In this regard, passive appreciation of an asset due to inflation or market forces which is not attributable in any way to marital funds or efforts is not a marital asset. Wright v. Wright, 505 So.2d 699, 700 (Fla. 5th DCA 1987). Accordingly, on remand the trial court should specifically determine to what extent these properties were enhanced by causes other than the parties' contribution of marital funds as well as the extent to which the value of the property was enhanced by the use of the parties' marital funds.
As to the matter of attorney's fees, however, I must respectfully dissent. In my view, the approach taken by the majority is inconsistent with the ruling in Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), and with the provisions of section 61.16 of the Florida Statutes (1989), which provide that the court may, after considering the financial resources of both parties, order a party to pay reasonable attorney's fees. On remand, I would instruct the trial court to award a reasonable partial attorney's fee to the wife after taking into consideration not only the respective income production of the parties and their respective net worth after retrial but also the reasonable time necessary to adequately represent the wife at the reasonable prevailing market rate.
In this case, we sit en banc as associate judges of the Second District Court of Appeal. Under the applicable Second District authority, if one party's earning ability or net worth is substantially greater than that of the other party, the latter may be awarded attorney's fees. Lochridge v. Lochridge, 526 So.2d 1010 (Fla. 2d DCA 1988); Blackburn v. Blackburn, 513 So.2d 1360 (Fla. 2d DCA 1987). In Lochridge, the Second District held that the trial court did not abuse its discretion in awarding attorney's fees to the wife, who had a net worth after equitable distribution of slightly in excess of $1,000,000 because the husband's net worth and income were substantially greater than that of the wife and his longtime record income production and his earning abilities were substantially superior to those of the wife. Accord Lozano-Ciccia v. Lozano, 599 So.2d 718 (Fla. 3d DCA 1992); Whitesides v. Whitesides, 585 So.2d 498 (Fla. 3d DCA 1991).
This view is consistent with the Florida Supreme Court's holding in Canakaris:
The final issue presented to us is whether the award of the wife's attorney's fees, to be determined at a subsequent hearing, was error. In Cummings v. Cummings, 330 So.2d 134, 136 (Fla. 1976), we cited Mertz v. Mertz, 287 So.2d 691 (Fla. 2d DCA 1973), as correctly stating that the purpose of section 61.16, Florida Statutes, was to ensure that both parties will have similar ability to secure competent legal counsel. Without question, the financial positions of the parties in this proceeding are not the same. The husband has a superior financial ability to secure and pay counsel. It is not necessary that one spouse be completely unable to pay attorney's fees in order for the trial court to require the other spouse to pay these fees. Given the complexity of the cause and the time necessary to appropriately resolve the issues, the award of attorney's fees in this case was proper to avoid an inequitable diminution of the fiscal sums granted the wife in these proceedings. (emphasis added).
Canakaris v. Canakaris, 382 So.2d at 1204-1205.
Nichols v. Nichols, 519 So.2d 620 (Fla. 1988) does not limit the award of attorney's fees to "an impecunious spouse" as the majority unfortunately suggests. Nichols neither limits nor modifies the Canakaris concept of awarding attorney's fees. The factual scenario in Nichols involved the situation of awarding temporary attorney's fees to an impecunious spouse even though that spouse failed to demonstrate any lack of ability to be represented by counsel during the dissolution proceedings. The Court in Nichols merely held that the trial court in that situation did not abuse its discretion in denying temporary attorney's fees.
The Canakaris concept of awarding attorney's fees is alive and well. For example, *622 in Werner v. Werner, 587 So.2d 473 (Fla. 3d DCA 1991), rev. denied, 599 So.2d 661 (Fla. 1992), the Third District followed Canakaris:
Next, we consider the wife's contention that the trial court erred in ordering the parties to pay their own attorney's fees and costs. We agree with her assertion. "It is not necessary that one spouse be completely unable to pay attorney's fees in order for the trial court to require the other spouse to pay these fees." Canakaris v. Canakaris, 382 So.2d 1197, 1205 (Fla. 1980). Because the husband's financial ability is superior to the wife's financial ability, the court should have ordered him to pay her fees. Martinez-Cid v. Martinez-Cid, 559 So.2d 1177 (Fla. 3d DCA 1990); Kuse v. Kuse, 533 So.2d 828 (Fla. 3d DCA 1988); Pappas v. Pappas, 489 So.2d 1242 (Fla. 3d DCA 1986); Kane v. Kane, 469 So.2d 933 (Fla. 3d DCA 1985); Angelides v. Angelides, 466 So.2d 1198 (Fla. 3d DCA 1985). (emphasis added).
Id. at 474.
In the instant case, the husband earns approximately $113,000 a year while the wife earns $54,000 a year. Consequently, I cannot say that the trial court abused its "discretion" by awarding the wife attorney's fees.[1] A partial attorney's fee award to the wife may be equitable under the facts of this case after taking into consideration the respective earning ability and net worth of each party after final distribution the parties' property and debts. At that point, the trial court will be in a better position to determine the extent of the partial award to the wife.
Moreover, any partial attorney's fees award must be based upon the time which is reasonable and necessary to adequately represent the wife. As the court in Matusow v. Matusow, 498 So.2d 462 (Fla. 3d DCA 1986) observed:
We also recognize that in many instances counsel that represent a wife in domestic litigation may spend much time and effort that is unnecessary or does not contribute to the resolution of the domestic litigation. The wife may be obligated to her attorneys for the work expended on her behalf in its entirety, but the husband under his agreement to pay fees should only be required to pay those fees reasonable and necessarily incurred in representing a party in the domestic litigation.
Id. at 463 (citations omitted).
The instant case involves a highly acrimonious dissolution which has resulted in very protracted litigation including appellate proceedings both in the Florida Supreme Court and this court. The trial court should determine whether the wife or the husband or both parties are responsible for unduly prolonging this matter and, if so, should adjust the hours reasonably necessary to adequately represent the wife because of this factor.
The attorney's fees in this case must also be based upon the prevailing market rate; that is, the rate charged in the community by attorneys of reasonably comparable skill, experience, and reputation for similar services. Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1151 (Fla. 1985), modified, Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990). The factors in determining a reasonable fee are set forth in Rule 4-1.5, Rules Regulating the Florida Bar, and adopted by the Florida Supreme Court. Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d at 830. However, I emphasize that one of those factors is the fee customarily charged in the locality for similar legal services. Although this is one of the eight enumerated factors of Rule 4-1.5,[2] the trial court, under the facts of this *623 acrimonious dissolution, must be diligent in seeing that the hourly rate is set at the prevailing market rate.
Because the initial award of attorney's fees to the wife exceeded $71,000, I am compelled to reiterate that the setting of attorney's fees is very important to the administration of justice and especially so in dissolution proceedings and that it is the responsibility of the bar and the bench to be ever mindful of unnecessary legal expenses in the litigation of contested dissolution matters. Florida Patient's Compensation Fund v. Rowe, 472 So.2d at 1149-1150; Katz v. Katz, 505 So.2d 25, 26 (Fla. 4th DCA 1987). The bar and the bench should always be mindful of the fact that the highly emotional character of contested dissolution matters causes parties to expend ever increasing hours on an expanding geometric ratio to the emotion involved, resulting in dissipation of the parties' accumulated assets. This unfortunate practice "results in a species of social malpractice that undermines the confidence of the public in the bench and bar." Florida Patient's Compensation Fund v. Rowe, 472 So.2d at 1149-1150, quoting Baruch v. Giblin, 122 Fla. 59, 63, 164 So. 831, 833 (1935).
Accordingly, I would remand this cause to the trial court for further proceedings consistent with the views expressed in this opinion.
NOTES
[1] The trial court found that Straley's non-marital assets in 601 and Harbor Property "accumulated" a value of $56,825.00 and $40,899.00, respectively, during the marriage, and deemed this accumulation, though passive, to be a marital asset.
[1] Section 61.075(3)(a)5, Florida Statutes (1989) provides:

61.075 Equitable distribution of marital assets and liabilities. 
* * * * * *
(3) As used in this section:
(a) "Marital assets and liabilities" include:
* * * * * *
5. All real property held by the parties as tenants by the entireties, whether acquired prior to or during the marriage, shall be presumed to be a marital asset. If, in any case, a party makes a claim to the contrary, the burden of proof shall be on the party asserting the claim for a special equity.
[2] § 61.075(3)(a)3, Fla. Stat. (1989).
[3] § 61.16, Fla. Stat. (1989); Massis v. Massis, 551 So.2d 587 (Fla. 1st DCA 1989); Turner v. Turner, 529 So.2d 1138, 1141 (Fla. 1st DCA 1988). See Gardner v. Gardner, 452 So.2d 981 (Fla. 1984).
[4] See Pfleger v. Pfleger, 558 So.2d 198 (Fla. 2d DCA 1990); Miceli v. Miceli, 533 So.2d 1171 (Fla. 2d DCA 1988); Keller v. Keller, 521 So.2d 273 (Fla. 5th DCA 1988).
[5] "[T]he correct formula to be used in situations where a spouse furnishes some but not all of the consideration for the entire property may be stated thusly: in addition to that spouse's automatic one-half share, the contributing spouse acquires a special equity in the property equal to one-half the ratio which that spouse's contribution bears to the entire consideration." Landay at 1200.
[6] Conner v. Conner, 439 So.2d 887 (Fla. 1983); Lodding v. Dunn, 251 So.2d 560 (Fla. 3d DCA 1971), cert. denied, 258 So.2d 818 (Fla. 1972).
[7] Fla. Bar Rule 4-1.5(B)(7); Hall v. Hall, 200 So.2d 544 (Fla. 3d DCA 1967), quoting Provus v. Provus, 44 So.2d 656 (Fla. 1950).
[8] Hudgens v. Hudgens, 411 So.2d 354 (Fla. 2d DCA 1982).
[9] Smith v. Smith, 495 So.2d 229 (Fla. 2d DCA 1986); Mertz v. Mertz, 287 So.2d 691 (Fla. 2d DCA 1973); Silberman v. Katcher, 214 So.2d 726 (Fla. 3d DCA 1968).
[10] The record reveals that Straley owned a 6.625 percent interest in Harbor Properties. Harbor was valued at $125 per square foot for a total of 21,940 square feet, or $2,742,500. Straley's total interest was therefore $181,690.62 ($2,742,500 X.06625). The trial court found the marital portion to be $40,899; the nonmarital portion would be $140,791.62. Likewise, Mark owned a one-sixth interest in 601 South Franklin. 601 was valued at $120 per square foot for 15,700 square feet, or a total of $1,884,000. Straley's total interest was therefore $313,874.40 ($1,884,000 X .1666). The trial court found the marital portion to be $56,825; thus the nonmarital portion was $257,049.40.
[11] He was awarded $257,492 in marital assets, but was also required to pay $111,000 in marital debts.
[12] Compare Hudgens v. Hudgens, 411 So.2d 354 (Fla. 2d DCA 1982) (husband earned over $100,000 per year; wife earned $14,000 per year).
[13] Turney v. Turney, 149 So.2d 83 (Fla. 3d DCA 1963).
[14] Martinez-Cid v. Martinez-Cid, 559 So.2d 1177 (Fla. 3d DCA 1990); Garrett v. Garrett, 559 So.2d 613 (Fla. 3d DCA 1990).
[15] Lewis v. Lewis, 485 So.2d 855 (Fla. 2d DCA 1986); Lyons v. Lyons, 436 So.2d 156 (Fla. 2d DCA 1983) (no award of attorney's fees where parties had substantially similar abilities to secure competent legal counsel).
[16] See Lochridge v. Lochridge, 526 So.2d 1010 (Fla. 2d DCA 1988); Blackburn v. Blackburn, 513 So.2d 1360 (Fla. 2d DCA 1987).
[17] See Beaver v. Beaver, 500 So.2d 742 (Fla. 5th DCA 1987); Mauldin v. Mauldin, 493 So.2d 1103 (Fla. 5th DCA 1986); Sizemore v. Sizemore, 487 So.2d 1080 (Fla. 5th DCA 1986).
[18] See O'Steen v. O'Steen, 478 So.2d 489 (Fla. 1st DCA 1985) (where parties split the marital assets equally, and there was a substantial disparity in their incomes, the trial court correctly awarded the wife a part of her attorney's fees).
[1] Since the advent of Canakaris, trial courts possess broad discretion in determining factual issues in regard to financial and property awards in domestic relations cases. See, e.g., Bedell v. Bedell, 583 So.2d 1005 (Fla. 1991); Hamlet v. Hamlet, 583 So.2d 654 (Fla. 1991); Marcoux v. Marcoux, 464 So.2d 542 (Fla. 1985); Walter v. Walter, 464 So.2d 538 (Fla. 1985); Cason v. Cason, 592 So.2d 1277 (Fla. 5th DCA 1992) (Cowart, J., concurring specially).
[2] Rule 4-1.5 sets forth the following eight factors:

(B) Factors to be considered as guides in determining a reasonable fee include the following:
(1) The time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;
(4) The significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;
(5) The time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and
(8) Whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client's ability to pay rested to any significant degree on the outcome of the representation.