WELLS, Judge.
In this appeal from a final judgment of dissolution of marriage, the husband claims that the trial court erred in ordering the equitable distribution of a nonmari-tal asset; the wife argues that the trial court erred in failing to award permanent periodic alimony. We affirm in part, reverse in part, and remand for further proceedings.
First, we agree with the husband’s claim that the equitable distribution of a *563 nonmarital asset cannot stand. By the trial court’s calculation, the husband had inherited some $1,094,500 in real estate from his parents. The sale of one of those properties had resulted in a $170,000 note. The final judgment of dissolution observed that the note was a nonmarital asset, but at the same time ordered that the note be assigned to the wife as equitable distribution.
In general, “[njonmarital assets may not be conveyed, absent agreement, to the non-owning spouse in equitable distribution.” Belmont v. Belmont, 761 So.2d 406, 408 (Fla. 2d DCA 2000); see Prest v. Tracy, 749 So.2d 538, 538 (Fla. 2d DCA 2000)(“In fashioning an equitable distribution scheme, the trial court is required to set apart to each spouse his or her non-marital assets and liabilities because those are not subject to equitable distribution.”); French v. French, 466 So.2d 1243, 1244 (Fla. 5th DCA 1985) (Cowart, J., dissenting)(“Equitable distribution is a doctrine relating to the division of marital property upon dissolution. There is no lawful doctrine for the division, on dissolution of marriage, of the separate property of one spouse. Any such “Robin Hood” doctrine would necessarily violate traditional, fundamental American concepts of private property rights”) See also § 61.075(1), Fla. Stat. (2002).
Our consideration of this matter does not end here, however. In attempting to support the lower court’s decision as regarding the note, the wife argues that the trial judge’s award should be viewed as “right for the wrong reason.” See Farrey’s Wholesale Hardware Co. v. Hobesound Industrial Park, Inc., 719 So.2d 374, 375 (Fla. 3d DCA 1998). She maintains that in reality the assignment of the note was a lump sum alimony award, needed for her support. See § 61.08(1), Fla. Stat. (2002)(observing that “[i]n any award of alimony, the court may order periodic payments or payments in lump sum or both.”) As stated in Gardner v. Gardner, 452 So.2d 981, 983 (Fla. 5th DCA 1984):
If the marital assets are insufficient after equitable distribution to provide a needy spouse with adequate resources and income, nonmarital assets may be drawn upon to provide alimony in the classic support sense.
While the instant record cannot unequivocally support such a right for the wrong reason analysis, there is at least some evidentiary basis for wife’s claim that the assignment of the note should be viewed as lump sum alimony. There was at least some testimony that the wife had been forced to rely on “castoffs from her church” and loans from fellow parishioners for her maintenance. Also, in ruling on the husband’s motion for rehearing, the trial judge’s observation as to the poor financial straits the wife would be left to maneuver absent the income from the note, demonstrates his contemplation of the wife’s need for some contribution to her support. The order on rehearing states:
On a net of about $1000. per month [wife’s income] the Wife can barely survive and most likely would have to sell the home in which the children have lived all of their lives. The $170,000. note when due will generate, in current conditions, net, after adjustment for taxes and inflation of about $4000. annually. This leaves the wife with a total net after tax income of about $16,000 per year and the marital residence which is debt free. If she chooses to spend the amount reflecting the impact of inflation on the $170,000. corpus, $170,000. will over time evaporate given her life expectancy.
On the other hand, the final judgment itself provides, in part:
*564 At most, this is a nine-year marriage and thus was not of sufficient duration to warrant permanent alimony. Additionally, the need for alimony is relatively minimal and Isabel Llamosas has not presented a plan for rehabilitative alimony. Isabel Llamosas has not proven need for alimony and no alimony is awarded to Isabel Llamosas.
On such mixed observations and in light of our conclusion that, as a matter of law, the award of the note as equitable distribution cannot stand, there is simply no way to discern how the trial judge would view the parties’ financial positions absent the distribution of the note, and whether he would conclude that the wife was in need of some additional support.[1]
As to the trial court’s observation that this nine year marriage was not of sufficient duration to warrant an award of permanent alimony, this is not the case.[2] As we observed in Gallinar v. Gallinar, 763 So.2d 447, 449 (Fla. 3d DCA 2000), “the shortness of a marriage does not preclude an award of permanent alimony.” See Echols v. Elswick, 638 So.2d 581, 582 (Fla. 1st DCA 1994)(rejecting claim that “short” six year marriage required denial of permanent alimony).
Accordingly, we reverse that part of the final judgment ordering the assignment of the note. We remand for the trial judge to review the wife’s need for support and the husband’s ability to pay in light of this decision, taking additional evidence as he deems necessary. The balance of the order is affirmed.

. Section 61.08, Florida Statutes (2002), provides:
(2) In determining a proper award of alimony or maintenance, the court shall consider all relevant economic factors, including but not limited to:
(a) The standard of living established during the marriage.
(b) The duration of the marriage.
(c) The age and the physical and emotional condition of each party.
(d) The financial resources of each party, the nonmarital and the marital assets and liabilities distributed to each.
(e) When applicable, the time necessary for either party to acquire sufficient education or training to enable such party to find appropriate employment.
(£) The contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education, and career building of the other party.
(g) All sources of income available to either party.

. The final judgment observed that the parties were married in 1982. Mr. Llamosas left the marital residence in 1989. In 1991 Mr. Lla-mosas obtained a divorce in the Dominican Republic. The final judgment also observed that the Dominican dissolution action would have "no effect on the property rights of Isabel Llamosas because the Dominican Republic court did not have in personam jurisdiction over Isabel Llamosas.”